IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**RODNEY STEVEN FLETCHER, SR.**                                    **PETITIONER**

VS.                        CASE NO. 5:16CV00012 SWW/PSH

**WENDY KELLEY, Director of the**
**Arkansas Department of Correction**                              **RESPONDENT**

**PROPOSED FINDINGS AND RECOMMENDATION**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Court Judge Susan Webber Wright. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court Clerk within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**DISPOSITION**

Rodney Steven Fletcher, Sr., ("Fletcher") seeks a writ of habeas corpus pursuant to 28 U.S.C. §2254. He is currently in the custody of the Arkansas Department of Correction (ADC) following a 2012 jury trial in the Circuit Court of Fulton County on the charges of commercial burglary, theft of property, and fraud. He was sentenced to 30 years of imprisonment for commercial burglary, 40 years for theft of property, and 30 years for fraud, with the sentences to be served consecutively. On direct appeal, Fletcher contended the jury's verdict was not supported by sufficient evidence, as the prosecution failed to prove he was the person who committed the crimes. The direct appeal was unsuccessful. *Fletcher v. State*, 2014 Ark. App. 50. Fletcher subsequently sought Rule 37 relief, filing a February 2014 petition with the trial court alleging numerous instances of ineffective assistance of counsel. Specifically, Fletcher argued his counsel was ineffective because: (1) his

speedy trial rights were violated; (2) his attorney failed to object and obtain a ruling when a witness testified Fletcher had previously been on parole; (3) the prosecution failed to comply with discovery obligations, causing the exclusion of exculpatory evidence; (4) the attorney failed to thoroughly investigate the charges and possible defenses; and (5) the sentences he received were illegal under Arkansas law. The trial court denied the Rule 37 petition, and the Supreme Court of Arkansas affirmed the denial in March 2015. *Fletcher v. State*, 2015 Ark. 106.

Fletcher, in his federal habeas corpus petition, claims:

(1) there was insufficient evidence to support his convictions;

(2) the sentences he received were excessive and illegal;

(3) the prosecution failed to provide discovery to the defense concerning a serology report which could have been exculpatory;

(4) the trial court erred in not granting a mistrial when a witness testified that Fletcher was on parole, in violation of the trial court's ruling on a motion in limine; and

(5) Fletcher's right to a speedy trial was violated.

Respondent Wendy Kelley ("Kelley") contends grounds 3 and 5 are not properly before this Court due to Fletcher's failure to adequately raise these claims in state court, as required by *Wainwright v. Sykes*, 433 U.S. 72 (1977), and its progeny. By Order of the Court dated February 16, 2016, Fletcher was notified of his opportunity to explain why these grounds should not be dismissed due to procedural default. He responded to the Court's Order, filing a supplemental pleading on February 26. In this pleading, Fletcher asserted any procedural failure in state court was due to ineffective assistance of counsel in his Rule 37 proceeding. Fletcher also asserted "a free standing claim of actual innocence." Docket entry no. 10, page 2.

When examining procedural default issues, we are aware of *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), and *Trevino v. Thaler*, 133 S.Ct. 1913 (2013), cases dealing with the the provision of effective counsel in post-conviction proceedings, such as Rule 37 Arkansas proceedings. It is clear that the absence of counsel, or ineffective counsel, in a Rule 37 proceeding may amount to cause for

Fletcher's procedural default.

Rather than exploring the intricacies of the Arkansas procedural rules and considering the current state of the law as it relates to *Martinez* and *Trevino, supra,* we find it more appropriate and a better use of judicial resources to proceed to the merits of the claims advanced by Fletcher. We are guided by the following language of the Eighth Circuit Court of Appeals:

> In cases such as this, it might well be easier and more efficient to reach the merits than to go through the studied process required by the procedural default doctrine. Recent commentary points up the problems with the cause and prejudice standard:
>> [T]he decision tree for habeas review of defaulted claims is intricate and costly. . . . In essence, *Sykes* and *Strickland* require habeas lawyers and federal judges and magistrates to work through the equivalent of a law school exam every time a defendant tries to escape procedural default.

*McKinnon v. Lockhart*, 921 F.2d 830, 833 n.7 (8th Cir. 1990) (quoting Jeffries & Stuntz, *Ineffective Assistance and Procedural Default in Federal Habeas Corpus*, 57 U.Chi.L.Rev. 679, 690 (1990)).

We turn to the merits of Fletcher's claims:

**Claim 1 – Insufficient Evidence to Support his convictions:** On direct appeal, the Arkansas Court of Appeals examined the evidence adduced against Fletcher. We quote at length from the Arkansas opinion:

> Rodney Steven Fletcher, a habitual offender, was charged criminally on multiple counts in connection with a 2010 break-in that occurred at a pharmacy in Salem, Arkansas. A Fulton County jury found him guilty of commercial burglary, theft of property, and fraud. The jury acquitted Fletcher of eighteen counts of possession of a controlled substance with intent to deliver regarding the same incident. The court sentenced Fletcher to thirty years in the Arkansas Department of Correction on the commercial-burglary conviction, forty years on the theft-of-property conviction, and thirty years on the fraud conviction. The fines totaled $35,000. The court ordered that Fletcher's prison sentences run consecutively. We affirm Fletcher's convictions.

> **I.**
> The evidence at trial showed that Salem Drug Company, a local pharmacy, was broken into just before 6:00 a.m. on 8 October 2010. Video cameras at the pharmacy recorded the break-in. The video footage showed a masked man with a limp taking several thousand pills from the pharmacy. Store records revealed that $10,200 in cash—and $1300 in customer checks held in a Ziploc baggy-were also missing. At least 3000 hydrocodone tablets were among the missing pills; the total purchase value of the controlled substances taken from the pharmacy was

around $11,869. The pharmacist who discovered the break-in, Dark York[1], said that she did not know who broke into the store.

Salem's police chief, Al Roark, told the jury that Fletcher came to mind when he watched the video footage of the break-in. Roark said that he had known Fletcher for all of his adult life because Fletcher had been married to his niece; Fletcher also lived close to the burglarized pharmacy, according to Chief Roark. Based on Chief Roark's information, the Arkansas State Police made Fletcher a person of interest. Police officers ultimately found Fletcher at Glen Jackson's house, a place where he was known to stay.

Members of the Jackson family testified during Fletcher's trial. Glen Jackson's son, David Jackson, said that Fletcher had stayed on their couch, left the house around 2:00 a.m. the morning the break-in occurred, and returned before daylight the same day. Glen Jackson also testified that Fletcher stayed with them the night before the burglary. Glen said that he had taken hydrocodone, Zanax, and drank three or four beers the night before the break-in; that he had slept all night; and that Fletcher woke him up around 8:00 a.m. (the morning the burglary happened) because Fletcher wanted to buy some tennis shoes at Walmart. Glen also told the jury that he owned a camouflage-hunting mask and that the police took his hunting mask and pistol when they searched his house.

The search of the Jackson home produced these items: a Ziploc baggy containing twenty four checks made out to Salem Drug Store, a mask, wet pants, an oversized purse with many bottles of prescription pills inside, injectable narcotics, a .45caliber handgun, and boots. Patrolman Johnny Byler testified that when Fletcher turned up at the Jackson home after the police had started investigating, Fletcher held a "wad of cash" and was argumentative. Police officers found $6,350.71 on Fletcher's person; Fletcher told the police it was an inheritance. State Police lead investigator Todd Shaw said that he saw Fletcher walking at the Jackson home with "a limp consistent with the person in the video camera," and that the camouflage-hunting mask and boots the police found in the Jackson home were consistent with the mask and boots the burglar had worn.

Arkansas State Crime Lab chemist Gary Dallas told the jury that the numerous pills the police recovered from the home where Fletcher was staying included hydrocodone and other controlled prescription drugs. Forensic DNA examiner Jennifer Beaty testified that the camouflage-hunting mask the police found contained a "very, very, very tiny amount of DNA," and that she was only able to get a partial profile of the DNA from it. Although Beaty could not say with all scientific certainty that the DNA profile from the mask matched Rodney Fletcher, she told the jury that "you might find one out of 67 million of the Caucasian population have those same areas."

Fletcher moved for directed verdicts at trial, arguing each time that there was insufficient DNA evidence to convict him and that the State failed to prove that he was the person who committed the crimes. Fletcher raises these same points here.

---

[1]The opinion of the Arkansas Court of Appeals identifies the pharmacist as Dark York. The transcript reflects her name is Darla York. (Tr. 243).

We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Hunt v. State,* 354 Ark. 682, 128 S.W.3d 820 (2003). When reviewing this challenge we determine whether substantial evidence, direct or circumstantial, supports the verdict. *Lockhart v. State,* 2010 Ark. 278, 367 S.W.3d 530. Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. *Id.* We view the evidence in the light most favorable to the verdict and consider only the evidence that supports the verdict. *Id.* Circumstantial evidence may suffice to support a guilty verdict, but it must exclude every other reasonable hypothesis consistent with innocence. *Id.* The credibility of witnesses is an issue for the jury and not for us. *Id.* Here, the jury was free to believe all or part of the witnesses' testimony and to resolve questions of conflicting testimony and inconsistent evidence. *Id.*

**II.**

According to Fletcher, "the only possible evidence" that he was the perpetrator was the inconclusive testimony of DNA expert Jennifer Beaty. The heart of Fletcher's argument is that the jury had to guess to convict him because Beaty could not say with scientific certainty that the DNA profile found on the mask came from him. And the remainder of the evidence, in Fletcher's view, is insufficient to support the convictions because Chief Roark did not identify him as the burglar, the large amount of cash the police found on him did not connect him to the break-in, and the Jacksons were either under the influence or asleep. We hold that the circuit court did not err in denying Fletcher's motions for directed verdict and that substantial evidence supports his convictions.

In every criminal case the State must of course present enough evidence for a jury to conclude that the defendant committed the crime. *Standridge v. State,* 357 Ark. 105, 113, 161 S.W.3d 815, 818 (2004). The State did so in this case. Investigator Shaw testified that Fletcher had a limp consistent with the person in the security video. Shaw also told the jury that the camouflage-hunting mask, and the boots the police found where Fletcher had been staying when the break-in occurred, were consistent with the mask and boots seen in the pharmacy's security video. Although the State's forensic expert could not say with all scientific certainty that the DNA profile from the mask matched Fletcher, she did identify Fletcher as a contributor to the DNA found on the mask. The 1 in 67 million chance that another Caucasian person's DNA would be a match on the hunting mask is something the jury could consider and weigh for or against the State's case. *Prater v. State,* 307 Ark. 180, 820 S.W.2d 429 (1991). The DNA evidence, in any event, was just some of the circumstantial evidence the State presented in the case.

This brings us to the checks. Dark York said that the checks made payable to the pharmacy were in a plastic Ziploc baggy inside the store. The police later found—in the home where Fletcher had arguably stayed the night of the break-in—twenty-four checks in a Ziploc baggy made payable to Salem Drug Store. As for Fletcher's explanation that the approximately $6,000 of cash the police found on him was his inheritance, the jury was permitted to consider it as evidence of his guilt. *Burley v. State,* 348 Ark. 422, 73 S.W.3d 600 (2002). That some of the pills recovered from the home Fletcher was staying in matched some of those that were stolen from the pharmacy was also evidence the jury could weigh when deciding whether Fletcher was guilty. *Prince v. State,* 304 Ark. 692, 805 S.W.2d

5

46 (1991). The jury also heard about Chief Roark's educated suspicion that Fletcher was the one in the pharmacy that morning based on his long and close acquaintance with Fletcher and Fletcher's proximity to the pharmacy. *Davenport v. State,* 373 Ark. 71, 281 S.W.3d 268 (2008). Finally, it was up to the jury to credit or discredit Glen and David Jackson's testimony about where Fletcher was at what time of day. *Id.*

>   Evidence of guilt is not less because it is circumstantial. *Coggin v. State,* 356 Ark. 424, 436, 156 S.W.3d 712, 720 (2004). Whether the circumstantial evidence excluded every hypothesis consistent with innocence was for the jury to decide. *Ross v. State,* 346 Ark. 225, 230, 57 S.W.3d 152, 156 (2001). We ask only whether the jury resorted to speculation and conjecture in reaching its verdict. *Edmond v. State,* 351 Ark. 495, 95 S.W.3d 789 (2003). Here, we have concluded that the State placed before the jury substantial evidence that Fletcher was the one who committed the crimes and that the jury did not resort to speculation and conjecture in reaching its guilty verdict.

>   Fletcher also argues that the jury's verdict was inconsistent because the jury acquitted him of eighteen controlled-substance charges but convicted him of commercial burglary, theft of property, and fraud. This argument was not made to the circuit court after the jury returned its verdict or in Fletcher's motion for a new trial. He cannot raise it for the first time in this appeal. *Eastin v. State,* 370 Ark. 10, 257 S.W.3d 58 (2007).

*Fletcher v. State*, 2014 Ark. App. 50.

When the state court has ruled on the merits of a petitioner's claims, a writ of habeas corpus may not be granted unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court." 28 U.S.C. § 2254(d)(1), (2). The United States Supreme Court offers guidance in interpreting the statute:

>   A state court decision will be "contrary to" our clearly established precedent if the state court either "applies a rule that contradicts the governing law set forth in our cases," or "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." A state court decision will be an "unreasonable application of" our clearly established precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."
>          . . . Distinguishing between an unreasonable and an incorrect application of federal law, we clarified that even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable.

*Penry v. Johnson*, 532 U.S. 782, 792-93 (citations omitted).

Here, Fletcher does not plead or prove that the Arkansas court ruling on the sufficiency of the evidence was contrary to, or involved an unreasonable application of, clearly established federal law. Although the state Supreme Court did not specifically cite federal law, that failure is not problematic as neither the court's reasoning nor result contradicts federal law. *See Cox v. Burger*, 398 F.3d 1025, 1030 (8th Cir. 2005). The applicable federal law requires the court to ask if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) [emphasis in original]. The Arkansas Supreme Court's ruling on sufficiency of the evidence is consistent with, and a reasonable application of the *Jackson v. Virginia* standard.

Fletcher has also not shown that the adjudication of the claim by the Arkansas Court of Appeals resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. The record establishes ample evidence of Fletcher's guilt. We have thoroughly reviewed the trial record and find the evidence meets and exceeds the requirements of *Jackson v. Virginia*. The video from the pharmacy, the DNA results, the cash, and the testimony showing Fletcher was absent from the Jackson residence when the crimes occurred, was substantial and convincing. There is no merit in Fletcher's first claim for relief.

**Claim 2 – The sentences he received were excessive and illegal:** Kelley argues this claim should be dismissed as it invokes only an allegation of state law error, for which federal habeas corpus relief is unavailable. 28 U.S.C. § 2254(a). Kelley is correct in this regard. Fletcher raised this claim in his Rule 37 petition, and the argument was rejected by the trial court and, on appeal, by the Supreme Court of Arkansas. The appellate court ably summarized and disposed of the claim:

> Appellant raised in his Rule 37.1 petition the claim that his sentences as a habitual offender exceeded the range set by Arkansas Code Annotated section 5–4–501(a) (Repl. 2006), which was the statute indicated on the original sentencing order as being applicable to his sentence. At the evidentiary hearing, the trial court noted that it was an error for the box next to section 5–4–501(a) to be checked on the

> original sentencing order because the jury was instructed that 5–4–501(b) applied and appellant was found to have the requisite number of prior convictions in accordance with section 5–4–501(b). The trial court entered a modified order to correct the error. Appellant contends on appeal that the trial court did not have authority to correct the sentencing order in his case to reflect that he was sentenced as a habitual offender under section 5–4–501(b) rather than 5–4–501(a). We find no error.
>
> Rule 37.1(a)(iii) permits the trial court to correct an improper sentence, but, here, there was no showing that an improper sentence was imposed. The trial court merely amended the sentencing order to reflect the correct statute under which appellant was sentenced in accordance with the instructions given the jury, and appellant does not argue that the amended sentencing order does not reflect the sentence imposed.

*Fletcher v. State*, 2015 Ark. 106.  The jury was properly instructed, returned proper verdicts and sentences, and Fletcher was properly sentenced by the trial judge.  There was no error in allowing the trial court to correct the clerical error entered on the original sentencing order.

It is possible for state court errors to constitute a denial of federal due process.  In such scenarios, a petitioner must "prove that the asserted error was so gross, . . . conspicuously prejudicial, . . . or otherwise of such magnitude that it fatally infected the trial and failed to afford the petitioner the fundamental fairness which is the essence of due process. . ." *Maggitt v. Wyrick*, 533 F.2d 383 (8th Cir. l976) (citations omitted).  The minor clerical error which was corrected in Fletcher's case falls far short of implicating any due process error.  There is no merit to Fletcher's second claim.

**Claim 3 – The prosecution failed to provide discovery to the defense concerning a serology report which could have been exculpatory:** Fletcher alleges the state "failed to provide discovery to the defense regarding a serology report. . . Evidence was found potentially containing DNA evidence that could of been exculpatory in nature, this evidence was not provided to the defense until the middle of trial.  This Petitioner was deprived of his federal and state constitutional right to present a defense."  There are three elements of a Brady[2] violation:

---

[2]*Brady v. Maryland*, 373 U.S. 83 (1963).

(1) The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) The evidence must have been suppressed by the state, either willfully or inadvertently; (3) Prejudice must have ensued. The failure to comply with discovery obligation violates the cause prong. Petitioner was thus prejudiced by the failure to comply with procedural rules, leading to exclusion of the evidence. There is a reasonable probability that the result would have been different had the serology report . . . evidence been admitted or discovered before trial." Docket entry no. 2, page 8.

When Fletcher attempted to raise this claim in his Rule 37 proceeding, the merits of the claim were not addressed, as the Supreme Court of Arkansas correctly noted that such claims are properly raised on direct appeal rather than in post-conviction proceedings. *Fletcher v. State*, 2015 Ark. 106. However, we have previously noted that we would overlook the apparent procedural default and consider the merits of this claim.

A review of the trial transcript shows the prosecution called Jennifer Beaty ("Beaty") as a witness. Beaty, a forensic DNA examiner at the Arkansas State Crime Laboratory, was deemed an expert in DNA analysis. (Tr. 494). She indicated she performed DNA testing on shoelaces submitted from boots found at the Jackson residence. When asked to explain how the testing process works, she testified the evidence is first submitted to the serology section of the crime lab. Defense counsel objected, noting that Beaty did not collect the DNA evidence, stating "I'd like the opportunity to cross examine the serologist who actually collected the evidence because obviously this wasn't a liquid sample." (Tr. 496). The trial judge excused the jury and allowed Fletcher's attorney to voir dire Beaty about her role and the role of the serologist in collecting the evidence for DNA. The prosecution also asked questions of Beaty. Ultimately, the prosecutor asked the trial judge to allow Beaty to be excused and reserve the right to recall her. The prosecutor then arranged for the serology reports to be faxed to the parties, and also arranged for the serologist, Kevin Sontag ("Sontag"), to testify the next day. Counsel for Fletcher had an opportunity to speak with Sontag and review the serology reports before Sontag

testified. (Tr. 603).

Sontag appeared the next day and described the process whereby he examined and collected samples of certain pieces of evidence submitted to the crime lab for DNA testing. The samples included shoelace cuttings and lifted hairs, which Sontag retained for possible DNA testing. He did not know if the samples were tested. (Tr. 627-628).

After Sontag's testimony, Beaty was recalled as a witness. She testified that the serologist at the crime lab receives bulk evidence, and then takes cuttings, swabs, and tape lifts. Beaty received the tape lifts from the face mask and oral swabs of Fletcher. (Tr. 635-38). She stated that the DNA on the camouflage mask was consistent with the DNA profile obtained from Fletcher's swab. (Tr. 638). Beaty also testified that she processed a swab from a handgun and tape lifts from the shoelaces, and no DNA profile was obtained from them. The hairs recovered by Sontag were not tested for DNA because Beaty was not requested to test any hair samples for DNA. (Tr. 638-651).

In order to prevail on this claim, Fletcher must show the prosecution suppressed evidence which was material and favorable to him, and prejudice ensued. *Collier v. Norris*, 485 F.3d 415, 422 (8th Cir. 2007). In order to show prejudice, Fletcher must demonstrate the suppression undermined confidence in the outcome of the trial. *Id.* Fletcher fails to bear his burden. While the evidence may not have been produced as timely as Fletcher would have liked, it was in fact produced, and Fletcher's counsel had adequate time to review the reports and prepare to cross-examine Sontag. We are convinced the late production of the reports did not prejudice Fletcher in any way. Defense counsel was able to establish that no DNA, including that of Fletcher, was found on a handgun or shoelaces, and that hairs lifted by Sontag were not tested. There is no merit to the claim that a Brady violation occurred.

**Claim 4 – Trial court error in not granting a mistrial when a witness testified that Fletcher was on parole, in violation of the trial court's ruling on a motion in limine:**

Fletcher's attorney filed a pre-trial motion in limine to exclude the fact that Fletcher was on

parole at the time the crimes were committed. (Tr. 100). Todd Shaw ("Shaw"), a seventeen year veteran with the Arkansas State Police, was called to testify for the prosecution. Shaw stated he was called to assist with the local police investigation of the crime scene on October 8, 2010, when the break-in occurred. On direct examination, Shaw made no mention of Fletcher's status as a parolee. On cross examination, Fletcher's attorney questioned Shaw about searching Fletcher's residence, as follows:

> Q [by Fletcher's attorney]: Whose residence did you specifically ask to search?
>
> A [by Shaw]: The residence and property of Rodney Steven Fletcher and/or unknown occupants.
>
> Q: Okay. The residence that you're going to search, did you believe that that was Rodney Steven Fletcher's residence?
>
> A: It was my understanding it's actually his brother's residence but he also resided there at that time.
>
> Q: Any reason you didn't ask for the search warrant to search his brother's residence?
>
> A: I – addressed it as his. I believe that was the actual address he had on file of his parole if I'm not mistaken.

(Tr. 459). No objection was lodged to this testimony when given. Thereafter, at a bench discussion, the following exchange occurred:

> By Mr. Russo [Fletcher's attorney]: This witness violated this Court's instruciton on the motion in limine when he specifically mentioned that my client was on parole.
>
> By Mr. Plumlee [prosecutor]: In response to his continued questioning about that information that he – that defense counsel elicited.
>
> By the Court: And if the contemporaneous objection had been made I might have could of done something about it. But it's too late to do that.

>Russo: Okay, I didn't want to do that because I didn't want to draw anymore attention to it, Judge. But --
>
>Court: Here's what we're going to do. We're going to break for lunch. It's noon.
>
>Russo: Okay.
>
>Court: And make sure all your witnesses know that under no circumstances they are to mention parole or anything of that nature; okay?
>
>Russo: Your Honor, I don't believe I opened the door in that matter, whatsoever. But I'd like a cautionary instruction from the Court to the witnesses outside the presence of the jury about it happening again.
>
>Court: You don't trust Mr. Plumlee to do it?
>
>Russo: I do but I think it carries more weight because I know Mr. Plumlee instructed his witnesses about this. But I think they need to understand that it carries a heavy penalty when it comes from you.
>
>Court: Okay. I'll do it.
>
>Plumlee: Judge, at the same time I would ask the Court to instruct Mr. Russo to be a little bit more careful about the way he asks his questions.
>
>Court: Well, I'm not sure that question – you know --
>
>Plumlee: Well, he had – Judge, he had asked it over and over and over.
>
>Court: Okay. Let's move on. Let's move on.

(Tr. 461-463).

Fletcher seeks habeas corpus relief based upon the trial court's failure to grant a mistrial after Shaw mentioned Fletcher's parole status. The short answer to this is that no motion for mistrial was made at trial. If Fletcher is contending the trial judge should have granted a mistrial *sua sponte*, he fails to articulate a legal basis for such action. The inaction of the trial judge must be egregious in order to demonstrate Fletcher was denied due process. We find no error by the trial judge in this regard. It follows that the trial was not "fatally infected" so as to deny Fletcher

due process. *See Maggitt v. Wyrick*, 533 F.2d 383 (8th Cir. l976).

The brief mention of Fletcher's parolee status was not met with an objection. Further, the trial judge agreed to caution subsequent witnesses on this issue, as requested by Fletcher's attorney. There was no error in dealing with Shaw's testimony, and there is no merit to Fletcher's fourth claim for relief.[3]

**Claim 5 – Fletcher's right to a speedy trial was violated:** Fletcher's fifth claim, a denial of his right to a speedy trial, was raised in his Rule 37 proceeding. The Supreme Court of Arkansas found that such a claim was not cognizable under Rule 37. Rather, a speedy trial claim was one which must be raised at trial and on appeal. Accordingly, Rule 37 relief was not available.

Kelley urges dismissal of this claim since it is based solely on a violation of Arkansas law. It is true that Fletcher cites only Ark. Rule Crim. P. 28.1 in his petition as the basis for relief. To the extent that this claim is only a state law claim, we recommend dismissal. A petitioner may not avail himself of federal habeas corpus relief for a violation of state law. *See Poe v. Caspari*, 39 F.3d 204 (8th Cir. 1994) (federal court is limited to determining whether a conviction violated the Constitution, laws, or treaties of the United States).

Even if we were to generously assume Fletcher is arguing a violation of federal law, there is no merit to his claim. Fletcher was charged with the crimes in October 2010 and went to trial in September 2012. The numerous delays in getting to trial were always granted with an eye toward a speedy trial, and the trial judge ruled that all delays after February 25, 2011, were attributable to Fletcher and thus were excluded for purposes of the speedy trial rule. (Tr. 69). In addition, shortly before trial, in August 2012, Fletcher sought dismissal for failure to prosecute

---

[3] In Fletcher's Rule 37 proceeding, he argued his appellate attorney was ineffective for failing to obtain an appellate ruling on the issue of whether the trial court should have granted a motion for mistrial when his parole status was revealed to the jury. The Supreme Court of Arkansas held Fletcher "offered no facts to show that counsel's decision not to ask for a mistrial under the circumstances was outside the bounds of reasonable professional judgment or that there was a ground for mistrial, . . ." *Fletcher v. State*, 2015 Ark. 106.

in a timely fashion. The trial judge again ruled there was no speedy trial violation. The factual findings by the trial court supporting his speedy trial rulings are presumed correct and Fletcher can rebut this presumption only by adducing clear and convincing evidence. He fails to do so. Considering the length of the delay, the reasons for the delay, Fletcher's assertion of his right to a speedy trial, and any prejudice suffered by the delay, we find Fletcher fails to show his constitutional rights were violated. *See Barker v. Wingo*, 407 U.S. 514 (1972).

**Claim 6 – Actual Innocence:** In Fletcher's supplemental pleading filed on February 26, 2016, he writes, "and at this time this petitioner would like to file a free standing claim of (actual innocence) with this court." Docket entry no. 10, page 2. We are guided on this issue by the Eighth Circuit Court of Appeals:

> The Supreme Court has not decided whether a persuasive demonstration of actual innocence after trial would render unconstitutional a conviction and sentence that is otherwise free of constitutional error. *See House v. Bell,* 547 U.S. 518, 554–55, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006). The Court has established, however, that the threshold for any such claim, if it were recognized, would be "extraordinarily high." *Herrera v. Collins,* 506 U.S. 390, 417, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). The threshold, if it exists, would require "more convincing proof" than the "gateway" standard that allows for consideration of otherwise defaulted constitutional claims upon a showing of actual innocence. *House,* 547 U.S. at 555, 126 S.Ct. 2064; *see Schlup v. Delo,* 513 U.S. 298, 315, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Thus, on a freestanding claim of actual innocence, it is not sufficient that a petitioner shows even that it is "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327, 115 S.Ct. 851. The "extraordinarily high" threshold, if recognized, would be even higher. *House,* 547 U.S. at 555, 126 S.Ct. 2064.

*Dansby v. Hobbs*, 766 F.3d 809, 816 (8th Cir. 2014).

Any discussion of establishing actual innocence, whether a free-standing claim under *Herrera* or a gateway claim under *Schlup*, is purely theoretical, as Fletcher offers no evidence to satisfy either of the standards. Clearly a petitioner is required to do more than point to trial errors or to reiterate arguments about the evidence adduced at trial in order to show his innocence at this stage. The *Schlup* standard requires new, reliable, scientific evidence be produced, and the *Herrera* case is even more exacting. Fletcher fails to approach satisfying either standard. In addition, our review of the trial transcript shows ample evidence supports his

14

convictions. There is no merit in this claim.

**Conclusion:** As noted early in our opinion, we have chosen to forego the procedural default analysis which was raised by Kelley. In so doing, we addressed the merits of claims 3 and 5, claims which clearly were not raised in state court. When we address such claims, Fletcher actually benefits from an application of a lower standard of review. Had the claims been raised in state court, Fletcher would bear the burden of showing that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court." 28 U.S.C. § 2254(d)(1), (2). Here, when we have foregone the procedural default analysis, Fletcher need not address or overcome any state court decision and may proceed directly to the merits of these claims. Even with the application of this lower standard on claims 3 and 5, Fletcher falls far short of demonstrating any constitutional error occurred on those claims. Further, his other arguments are without merit, as he fails to demonstrate any constitutional defect in his proceedings.

For the foregoing reasons, we recommend the petition for writ of habeas corpus be dismissed and the relief requested be denied because all claims are without merit.

Pursuant to 28 U.S.C. § 2253 and Rule 11 of the Rules Governing Section 2554 Cases in the United States District Court, the Court must determine whether to issue a certificate of appealability in the final order. In § 2254 cases, a certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(1)-(2). The Court finds no issue on which petitioner has made a substantial showing of a denial of a constitutional right. Thus, we recommend the certificate of appealability be denied.

IT IS SO ORDERED this 25th day of April, 2016.

                                                                                              _____
                                                                                              UNITED STATES MAGISTRATE JUDGE